Argued June 16, affirmed July 14, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
MENTRUM, *Respondent, and* MENTRUM
(No. 406-453), *Appellant.*
538 P2d 80

*Robert L. Ackerman,* Springfield, argued the cause for appellant. With him on the brief were Babcock, Ackerman & Hanlon, Springfield.

*Warren C. Deras,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

In this dissolution-of-marriage proceeding the mother appeals, contending that she, not the father, should be awarded custody of the three-year-old son of the parties, and that she should receive support from her former spouse until she completes her college education in December 1975.

■ Our review of the record leads us to agree with the trial judge's award of custody to the father. The custody and visitation study report received in evidence is in accord with the evidence adduced at trial. It states in pertinent part:

*"CONTENTIONS OF THE FATHER:* Larry Mentrum reports that the marital relationship broke down because of Linda's lack of interest in the home. He complains that she spent considerable time outside of the home during the evening hours. She gave the impression that the child was in the way and on occasion made this statement to other people.

"Mrs. Mentrum moved out of the home several months ago and enrolled at the University of Oregon to continue her studies in architecture. According to Mr. Mentrum, his wife proposed originally that he keep the child and that she

would return to Portland on weekends for visitation.

"Mr. Mentrum is an architect. Christopher attends a day care center during the father's working hours. He is with his father during the balance of the time.

"*CONTENTIONS OF THE MOTHER:* Linda Mentrum states that she moved out of the home as they were experiencing marital difficulties. Her motivation for leaving was to ease the tension. Her hope was that they could work out their problems. She has returned to the University of Oregon to continue her studies in architecture after realizing that the marriage was disintegrating.

"Mrs. Mentrum recently had Christopher for several weeks in Eugene. She reports that Christopher adjusted well to her living situation. During the time she was in class Christopher was enrolled in a day care center operated by the university.

"*THE CHILD:* Christopher was observed in the counselor's office. He appeared secure and outgoing. He displayed some confusion around his parents separate living situations.

"*IMPRESSIONS:* * * *

"Both parents appear sincerely interested in the welfare of Christopher. There is no concern on the part of the counselor that either parent would not be a proper custodian for the child.

"One point which seemed rather paramount in this case was the close relationship between the father and son. Apparently this closeness developed during the time the mother was out of the home for classes, etc. I see Mr. Mentrum as a sensitive person who, through circumstances, has fulfilled somewhat of a mothering role.

"My concern in Mrs. Mentrum's case is that her priority seemed to be a return to school. She was content to leave the child with his father at the

time of the separation and apparently during the course of her education.

"On the basis of my observations, I would suggest that Christopher remain with his father and that the mother have liberal visitation with him."

We also agree with the trial judge's observation to the same effect—that both parties appear to be adequate parents, but that the child's well-being is apparently somewhat higher on the father's list of priorities than on the mother's.

 The trial court's decree does not require the mother to contribute to the child support. Under that circumstance we do not think an award of support to her is warranted. The father, in his brief, suggests a modification of that portion of the decree relating to the division of property of the parties. For the reasons which follow we do not accept the suggestion.

The only assets of the marriage were a 1969 automobile, household furnishings and a house which the parties purchased in 1972 for $17,250, with a mortgage due of $16,800. At the hearing the husband valued the house at $18,000; the wife valued it at $28,000. There was no testimony as to value from any other witness. The trial court awarded the automobile and household furnishings to the husband and required him to assume family debts of $1700. With regard to the house the court's decree provided:

"* * * * *

"4. The Petitioner and Respondent shall become tenants in common of their home * * * with the Petitioner [father] being a two-thirds (2/3) owner and the Respondent a one-third (1/3) owner of the parties' equity in said premises and the Petitioner shall have the exclusive use and possession of said premises for a period not to exceed three (3) years from the date hereof, during which time a partition suit may not be maintained by either party and the

Petitioner is to continue to pay the taxes, insurance premiums and mortgage payments on said premises * * *.

"* * * * *."

The respondent states in his brief:

"* * * The court awarded appellant an undivided one-third of the real property rather than fixing a value for her interest. This not only discourages respondent from maintaining and improving the real property at an optimal level, but it will also lead to difficulties in determining the value of appellant's interest in the event respondent wishes to keep the minor child in the same home at the end of the three year period set by the court after which appellant may partition the property.

"Recognizing appellant's immediate financial need, respondent will make every effort to raise sufficient funds to pay appellant for her interest in the house as soon as possible if this Court establishes a fixed value for that interest."

The difficulty is that then the father goes on and suggests that we put a value on the house which is substantially less than the value placed on the property by his former wife. If her interest is to be bought out now it will have to be done through agreement by the parties.

Affirmed. No costs to either party.